UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| MAX M. WACHTEL, IV, ) | Case No. 5:11CV1093 |
| ) | |
| Petitioner, ) | JUDGE JAMES G. CARR |
| ) | |
| v. ) | Magistrate Judge George J. Limbert |
| ) | |
| KIMBERLY CLIPPER, Warden, ) | |
| ) | |
| Respondent. ) | **Report and Recommendation** |
| ) | **of Magistrate Judge** |

On May 18, 2011[1], Petitioner Max M. Wachtel, IV ("Petitioner"), acting *pro se*, filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. §2254. ECF Dkt. #1. Petitioner seeks relief for alleged constitutional violations that occurred as a result of his conviction and sentence in the Stark County, Ohio Court of Common Pleas, for one count of corrupting another with drugs, in violation of R.C. 2925.02(A)(4)(a), and two counts of trafficking in heroin, in violation of R.C. 2925.03(A)(1)(C)(6)(c). With leave of Court, on December 2, 2011, Respondent Kimberly Clipper ("Respondent"), Warden of Grafton Correctional Institution, where Petitioner is incarcerated, filed an answer/return of writ. ECF Dkt. #5. Although the undersigned granted a motion for a 60-day extension of time to file the traverse, no traverse was filed. For the following reasons, the undersigned RECOMMENDS that the Court DISMISS the petition in its entirety with prejudice:

---

[1]The filing date for a petition from an incarcerated *pro se* petitioner is the date the petition was handed over to the prison mail system, not the date it was received and docketed by the federal habeas court. *Houston v. Lack*, 487 U.S. 266, 270-72, 108 S.Ct. 2379, 101 L.Ed.2d 245 (1988).

**I.     SYNOPSIS OF THE FACTS**

The Fifth District Court of Appeals of Ohio set forth the relevant facts and procedural history of this case on direct appeal. ECF Dkt. #5-11 at 116-127.[2] These binding factual findings "shall be presumed to be correct," and Petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. §2254(e)(1); *Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998), *cert. denied*, 119 S.Ct. 2403 (1999):

> {¶ 2} On July 11, 2008, law enforcement officers working with the Stark County Metro Narcotics Unit arranged a controlled buy of heroin from appellant, utilizing a confidential informant, William "Uncle Bill" Heden. After the officers searched and fitted Heden with recording devices, Heden drove to appellant's apartment on South Canal Street in Canal Fulton, Ohio. According to Heden, appellant came out to the car and sold him more than a gram of heroin; Heden then returned to the metro officers, who were parked nearby.
>
> {¶ 3} The aforesaid transaction was not adequately recorded on Heden's audio and video devices. Nonetheless, on the same date, a sixteen-year-old female neighbor of appellant, A.D., purchased and snorted $10.00 worth of heroin from appellant at his Canal Street apartment. A.D. felt ill after using the heroin, and later left with her boyfriend.
>
> {¶ 4} On July 14, 2008, metro officers again arranged a controlled buy of heroin from appellant utilizing Heden as the CI. After the officers searched and fitted Heden with recording devices, Heden again drove to appellant's apartment on South Canal Street in Canal Fulton, Ohio. Appellant came out to the car; the two then went inside, and appellant sold him more than a gram of heroin. Heden then returned to the nearby metro officers.

*State v. Wachtel*, 2009 WL 3600366, ECF Dkt. #5-11 at 117.

**II.    PROCEDURAL HISTORY**

**A.     State Trial Court**

On August 25, 2008, Petitioner was indicted for:

-one count of corrupting another with drugs, in violation of R.C. 2925.02(A)(4)(a) &/or (c)(Count One)[3];

---

[2]Page numbers in this report and recommendation refer to the Page ID# in the electronic filing system.

[3]R.C. 2925.02(A)(4)(a) prohibits "[f]urnish[ing] or administer[ing] a controlled substance to a juvenile who is at least two years the offender's junior, when the offender knows the age of the juvenile or is reckless in that regard." R.C. 2925.02(A)(4)(c) prohibits "[i]nduc[ing] or caus[ing] a juvenile who is at least two years the offender's junior to commit a felony drug abuse offense, when the offender knows the age of the juvenile or is reckless in that regard."

-two counts of trafficking in heroin in violation of R.C. 2925.03(A)(1)(C)(6)(c)(Counts Two and Four)[4];

-one count of trafficking in heroin in violation of R.C. 2925.03(A)(1)(C)(6)(b)(Count Three);

ECF Dkt. #5-11 at 39-41.

The trafficking charge in count two was alleged to have occurred "in the vicinity of a minor" and, pursuant to R.C. 2925.03(c)(6)(c), was a felony of the third degree. *Id.* at 39. On September 16, 2008, Petitioner's trial counsel filed a motion to dismiss the juvenile enhancement specification, arguing that the alleged transaction did not occur within 100 feet of a juvenile. *Id.* at 43-44. Although there is no notation on the record, the motion was apparently denied.

A jury was empaneled on October 16, 2008 and on October 17, 2008, the jury acquitted Petitioner of the trafficking charge in Count Three, and entered guilty verdicts on the corrupting charge in Count One, and the trafficking charges in Counts Two and Four. *Id.* at 46. On October 20, 2008, Petitioner was sentenced to a term of imprisonment of three years on Count One, five years on Count Two, and twelve months on Count Four, each sentence to be served consecutively, for an aggregate sentence of eight years and twelve months. *Id.* at 46-50. In addition, the trial court imposed an aggregate fine of $12,500.00.

---

[4]R.C. 2925.03(A)(1) prohibits "[s]ell[ing] or offer[ing] to sell a controlled substance." R.C. 2925.03(C)(6)(c) reads, in its entirety, "If the drug involved in the violation is heroin or a compound, mixture, preparation, or substance containing heroin, whoever violates division (A) of this section is guilty of trafficking in heroin. The penalty for the offense shall be determined as follows:

> (c) Except as otherwise provided in this division, if the amount of the drug involved equals or exceeds ten unit doses but is less than fifty unit doses or equals or exceeds one gram but is less than five grams, trafficking in heroin is a felony of the fourth degree, and division (B) of section 2929.13 of the Revised Code applies in determining whether to impose a prison term for the offense. If the amount of the drug involved is within that range and if the offense was committed in the vicinity of a school or in the vicinity of a juvenile, trafficking in heroin is a felony of the third degree, and there is a presumption for a prison term for the offense.

### B. Direct Appeal

On November 26, 2008, Petitioner, through new appellate counsel, filed a notice of appeal to the Ohio Court of Appeals for the Fifth District. *Id.* at 51. Petitioner, raised the following assignments of error in his appellate brief:

ASSIGNMENT OF ERROR I:

THE TRIAL COURT ERRED IN NOT GRANTING APPELLANT'S MOTION FOR DISMISSAL IN ACCORDANCE WITH CRIM.R. 29, AS THERE WAS INSUFFICIENT EVIDENCE TO CONVICT THE APPELLANT ON COUNTS ONE, TWO AND FOUR OF THE INDICTMENT.

ASSIGNMENT OF ERROR II:

THE JURY'S VERDICT AGAINST THE APPELLANT OF GUILTY ON THE CHARGES ON COUNTS ONE, TWO AND FOUR OF THE INDICTMENT IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND SHOULD BE OVERTURNED.

ASSIGNMENT OF ERROR III:

THE TRIAL COURT ABUSED ITS DISCRETION IN NOT GRANTING A MISTRIAL WHEN PRIOR ACTS TESTIMONY REGARDING THE APPELLANT WAS PRESENTED TO THE JURY AND DENIED APPELLANT OF A FAIR TRIAL.

*Id.* at 59.

On June 29, 2009, the Fifth District Court of Appeals affirmed the trial court's judgment of conviction and sentence. *Id.* at 116-127.

### C. Supreme Court of Ohio

On December 17, 2009, Petitioner, through new counsel, filed a timely appeal to the Supreme Court of Ohio. *Id.* at 104-105. In his memorandum in support of jurisdiction, Petitioner raised the following propositions of law:

PROPOSITION OF LAW I.

THE PLAIN LANGUAGE OF R.C. 2925.02 REQUIRES PROOF BEYOND A REASONABLE DOUBT THAT A CONTROLLED SUBSTANCE WAS FURNISHED OR ADMINISTERED.

PROPOSITION OF LAW II.

EXPERIENCE AND KNOWLEDGE OF A DRUG USER LAY WITNESS ESTABLISHES HIS OR HER COMPETENCE TO EXPRESS AN OPINION ON

> THE IDENTITY OF A CONTROLLED SUBSTANCE ONLY IF THERE IS A PROPER FOUNDATION FOR THIS TESTIMONY.

*Id.* at 107.

On March 10, 2010, the Ohio Supreme Court denied leave to appeal and dismissed the case because it did not involve any substantial constitutional question. *Id.* at 140.

### III. 28 U.S.C. § 2254 PETITION

On May 18, 2011, Petitioner, through counsel, filed the instant petition for a writ of habeas corpus. ECF Dkt. #1. Petitioner raises the following ground for relief:

> GROUND ONE:
>
> PETITIONER WAS DENIED HIS RIGHT TO DUE PROCESS AND EQUAL PROTECTION AS GUARANTEED BY THE V AND XIV AMENDMENTS TO THE UNITED STATES CONSTITUTION AS THERE WAS INSUFFICIENT EVIDENCE TO CONVICT PETITIONER ON COUNT ONE OF THE INDICTMENT, AS PROOF BEYOND A REASONABLE DOUBT WAS NOT PRESENT TO DEMONSTRATE THAT A CONTROLLED SUBSTANCE WAS FURNISHED OR ADMINISTERED.
>
> SUPPORTING FACTS:
>
> (1) NO SCIENTIFIC PROOF OR LABORATORY ANALYSIS OF THE SUBSTANCE IN QUESTION, PROVING PETITIONER WAS GUILTY, WAS PRESENTED AT TRIAL; AND (2) STATE'S ONLY WITNESS TESTIFIED THAT "IT COULD HAVE BEEN SOME OTHER SUBSTANCE" AND "HAS NO IDEA TO THIS DAY WHAT SHE INGESTED."

ECF Dkt. #1.

### IV. PROCEDURAL BARRIERS TO REVIEW

A petitioner must overcome several procedural barriers before a court will review the merits of a petition for a federal writ of habeas corpus. As Justice O'Connor noted in *Daniels v. United States*, "Procedural barriers, such as statutes of limitations and rules concerning procedural default and exhaustion of remedies, operate to limit access to review on the merits of a constitutional claim." 532 U.S. 374, 381 (2001); *see also United States v. Olano*, 507 U.S. 725, 731 (1993). However, the Supreme Court has also held that it would be in the interests of the parties and the courts for the merits of a petition to be addressed forthwith if it is clear that the applicant does not even raise a colorable federal claim. *Granberry v. Greer*, 481 U.S. 129, 135 (1987); *Prather v. Rees*, 822 F.2d 1418, 1421-22 (6th Cir. 1987) (lack of exhaustion was properly excused where petition was

plainly meritless, the state had not addressed exhaustion, and disposition of the case would not offend federal-state comity).

### A. Statute of Limitations

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") statute of limitations period for filing a petition for a writ of federal habeas corpus is one year, and it begins to run on the date judgement became final. 28 U.S.C. §2244(d)(1). The AEDPA statute of limitations is not at issue in this case.

### B. Exhaustion of State Remedies

As a general rule, a state prisoner must exhaust all possible state remedies or have no remaining state remedies before a federal court will review a petition for a writ of habeas corpus. 28 U.S.C. § 2254(b) and (c); *see also Baldwin v. Reese*, 541 U.S. 27, 29 (2004). The exhaustion requirement is satisfied "once the federal claim has been fairly presented to the state courts." *Franklin v. Rose*, 811 F.2d 322, 325 (6th Cir. 1987). To exhaust a claim, a petitioner must present it "to the state courts under the same theory in which it is later presented in federal court." *Wong v. Money*, 142 F.3d 313, 322 (6th Cir. 1998); *see also McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000). General allegations of the denial of rights to a "fair trial" and "due process" do not "fairly present" claims that specific constitutional rights were violated. *McMeans*, 228 F.3d at 681 citing *Petrucelli v. Coombe*, 735 F.2d 684, 688-89 (2d Cir. 1984).

In order to have fairly presented the substance of each of his federal constitutional claims to the state courts, the petitioner must have given the highest court in the state in which he was convicted a full and fair opportunity to rule on his claims. *Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir. 1990). A petitioner fairly presents the substance of his federal constitutional claim to the state courts by: (1) relying upon federal cases that use a constitutional analysis; (2) relying upon state cases using a federal constitutional analysis; (3) phrasing his claim in terms of constitutional law or in terms sufficiently particular to allege the denial of a specific constitutional right; or (4) alleging facts that are obviously within the mainstream of constitutional law. *Clinkscale v. Carter*, 375 F.3d 430, 437 (6th Cir. 2004), quoting *Newton v. Million*, 349 F.3d 873, 877 (6th Cir. 2003); *see*

*also Levine v. Torvik*, 986 F.2d 1506, 1516 (6th Cir. 1993) cert. denied, 509 U.S. 907 (1993)(quotation omitted).

In *Harris v. Lafler*, the Sixth Circuit laid out the options that a district court may pursue in dealing with a petition that contains unexhausted claims:

> When faced with this predicament in the past, we have vacated the order granting the writ and remanded the case to the district court so that it could do one of four things: (1) dismiss the mixed petition in its entirety, *Rhines*, 544 U.S. at 274, 125 S.Ct. 1528; (2) stay the petition and hold it in abeyance while the petitioner returns to state court to raise his unexhausted claims, *id*. at 275, 125 S.Ct. 1528; (3) permit the petitioner to dismiss the unexhausted claims and proceed with the exhausted claims, id. at 278, 125 S.Ct. 1528; or (4) ignore the exhaustion requirement altogether and deny the petition on the merits if none of the petitioner's claims has any merit, 28 U.S.C. § 2254(b)(2).

553 F.3d 1028, 1031-32 (6th Cir. 2009). The Supreme Court has held that "the petitioner has the burden . . . of showing that other available remedies have been exhausted or that circumstances of peculiar urgency exist." *Darr v. Burford*, 339 U.S. 200, 218-19 (1950), *overruled in part on other grounds*, *Fay v. Noia*, 372 U.S. 391 (1963). A petitioner will not be allowed to present claims never before presented in the state courts unless he can show cause to excuse his failure to present the claims in the state courts and actual prejudice to his defense at trial or on appeal, or that he is actually innocent of the crime for which he was convicted. *Coleman v. Thompson*, 501 U.S. 722, 748 (1991).

### C. **Procedural Default**

The procedural default doctrine serves to bar review of federal claims that a state court has declined to address when a petitioner does not comply with a state procedural requirement. *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977). In these cases, "the state judgment rests on independent and adequate state procedural grounds." *Coleman,* 501 U.S. at 730. For purposes of procedural default, the state ruling with which the federal court is concerned is the "last explained state court judgment." *Munson v. Kapture*, 384 F.3d 310, 314 (6th Cir. 2004) citing *Ylst v.Nunnemaker*, 501 U.S. 797, 805 (1991) (emphasis removed). When the last explained state court decision rests upon procedural default as an "alternative ground," a federal district court is not required to reach the merits of a habeas petition. *McBee v. Abramajtys*, 929 F.2d 264, 265 (6th Cir. 1991). In determining whether a state court has addressed the merits of a petitioner's claim, federal

courts must rely upon the presumption that there is no independent and adequate state grounds for a state court decision absent a clear statement to the contrary. *Coleman*, 501 U.S. at 735.

Applying this presumption, the Sixth Circuit Court of Appeals established a four-pronged analysis to determine whether a claim has been procedurally defaulted. *Maupin v. Smith*, 785 F.2d 135 (6th Cir. 1986). Under the *Maupin* test, a reviewing court must decide:

(1) whether the petitioner failed to comply with an applicable state procedural rule;

(2) whether the state courts actually enforced the state procedural sanction;

(3) whether the state procedural bar is an "adequate and independent" state ground on which the state can foreclose federal review; and

(4) if the above are met, whether the petitioner has demonstrated "cause" and "prejudice."

*Id.* at 138.

Under the first prong of *Maupin*, there must be a firmly established state procedural rule applicable to the petitioner's claim and the petitioner must not have complied with the rule. *Ford v. Georgia*, 498 U.S. 411, 423-24 (1991) (state procedural bar that is not "firmly established and regularly followed" cannot serve to bar federal judicial review); *Franklin v. Anderson*, 434 F.3d 412, 418 (6th Cir. 2006). The question of whether a state procedural rule was "firmly established and regularly followed" is determined as of the time at which it was to be applied. *Richey v. Mitchell*, 395 F.3d 660, 680 (6th Cir. 2005).

Under the second prong, the last state court to which the petitioner sought review must have invoked the procedural rule as a basis for its decision to reject review of the prisoner's federal claims. *Coleman v. Thompson*, 501 U.S. 722, 729-30 (1991) (appeal dismissed for lack of jurisdiction); *Richey*, 395 F.3d at 678 ("a lapsed claim survives if the state court overlooked the default and decided the claim anyway"); *Baze v. Parker*, 371 F.3d 310, 320 (6th Cir. 2004) (if a state court does not expressly rely on a procedural deficiency, then a federal court may conduct habeas review); *Gall v. Parker*, 231 F.3d 265, 310 (6th Cir. 2000) (even if issue is not raised below, where state supreme court clearly addresses the claim, no procedural bar arises); *Boyle v. Million*, 201 F.3d 711, 716-17 (6th Cir. 2000) (where a state appellate court characterizes its earlier decision as

substantive, the earlier decision did not rely on a procedural bar; therefore, the cause and prejudice test does not apply).

Under the third prong, a state judgment invoking the procedural bar must rest on a state law ground that is both independent of the merits of the federal claim and is an adequate basis for the state court's decision. *Munson v. Kapture*, 384 F.3d 310, 313-14 (6th Cir. 2004).

Under the fourth prong, a claim that is procedurally defaulted in state court will not be reviewable in federal habeas corpus unless the petitioner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or that failure to consider the claim will result in a fundamental miscarriage of justice. *Coleman*, 501 U.S. at 751. "Cause" is a legitimate excuse for the default, and "prejudice" is actual harm resulting from the alleged constitutional violation. *Magby v. Wawrzaszek*, 741 F.2d 240, 244 (9th Cir. 1984), *cert. denied*, 490 U.S. 1068 (1985). If a petitioner fails to show cause for his procedural default, the reviewing court need not address the issue of prejudice. *Smith v. Murray*, 477 U.S. 527 (1986).

Simply stated, a federal court may review federal claims:

> that were evaluated on the merits by a state court. Claims that were not so evaluated, either because they were never presented to the state courts (i.e., exhausted) or because they were not properly presented to the state courts (i.e., were procedurally defaulted), are generally not cognizable on federal habeas review.

*Bonnell v. Mitchel,* 301 F.Supp.2d 698, 722 (N.D. Ohio 2004). The above standards apply to the Court's review of Petitioner's claims.

### V. **STANDARD OF REVIEW**

The undersigned further recommends that the Court find that the AEDPA governs this Court's review of the instant case because Petitioner filed his petition for the writ of habeas corpus pursuant to 28 U.S.C. § 2254 on May 18, 2011, well after the act's effective date of April 26, 1996. *Harpster v. Ohio*, 128 F.3d 322, 326 (6th Cir. 1997), *cert. denied*, 522 U.S. 1112 (1998). Under Section 2254, a state prisoner is entitled to relief if he is held in custody in violation of the United States Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(d).

The AEDPA sets forth the standard of review for the merits of a petition for a writ of habeas corpus. The AEDPA provides:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was *contrary to*, or involved an *unreasonable application of*, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (emphasis added). In *Williams v. Taylor*, the Supreme Court clarified the language of 28 U.S.C. § 2254(d) and stated:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). Further, the Supreme Court declared that "a federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id.* Elaborating on the term "objectively unreasonable," the Court stated that "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.*; *see also Bailey v. Mitchell,* 271 F.3d 652, 655-56 (6th Cir. 2001).

The Sixth Circuit Court of Appeals offers the following guidelines for applying the AEDPA limitations:

> A. Decisions of lower federal courts may not be considered.
>
> B. Only the holdings of the Supreme Court, rather than its dicta, may be considered.
>
> C. The state court decision may be overturned only if:
>
> 1. It '[applies] a rule that contradicts the governing law set forth in [Supreme Court of the United States] cases,' [the Supreme Court precedent must exist at the time of petitioner's direct appeal] or;

-10-

      2.    the state-court decision 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [Supreme Court] precedent;' or

      3.    'the state court identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case;' or

      4.    the state court 'either unreasonably extends a legal principle from [a Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply.'

D. Throughout this analysis the federal court may not merely apply its own views of what the law should be. Rather, to be overturned, a state court's application of Supreme Court of the United States precedent must also be objectively unreasonable. That is to say, that 'a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.' 'An unreasonable application of federal law is different from an incorrect or erroneous application of federal law.'

E. Findings of fact of the state courts are presumed to be correct. 'The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.'

*Bailey v. Mitchell,* 271 F.3d 652, 655-56 (6th Cir. 2001) (internal citations omitted).

Finally, a reviewing federal court is bound by the presumption of correctness, under which the federal court is obligated to "accept a state court's interpretation of the state's statutes and rules of practice." *Hutchinson v. Marshall*, 744 F.2d 44, 46 (6th Cir. 1984), *cert. denied*, 469 U.S. 1221 (1985); *see also Duffel v. Duttion*, 785 F.2d 131, 133 (6th Cir. 1986). The presumption of correctness is set forth in 28 U.S.C. § 2254(e), which provides:

> (e)(1)In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct.

28 U.S.C. § 2254(e). The presumption of correctness applies to basic primary facts, and not to mixed questions of law and fact. *Levine v. Torvik*, 986 F.2d 1506, 1514 (6th Cir. 1993), *cert. denied,* 509 U.S. 907 (1993). The presumption also applies to "implicit findings of fact, logically deduced because of the trial court's ability to adjudge the witnesses' demeanor and credibility." *McQueen v. Scroggy*, 99 F.3d 1302, 1310 (6th Cir. 1996), *cert. denied*, 520 U.S. 1257 (1997). Furthermore,

672,676, n.4 (6th Cir. 2000). Petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

> The United States Supreme Court recently observed:
>
> Section 2254(d) reflects the view that habeas corpus is a "guard against extreme malfunctions in the state criminal justice systems," not a substitute for ordinary error correction through appeal. *Jackson v. Virginia*, 443 U.S. 307, 332, n. 5, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) (Stevens, J., concurring in judgment). As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

*Harrington v. Richter,* __ U.S. __, 131 S.Ct. 770, 786-787 (2011).

## VI. ANALYSIS

### A. Ground One

In Ground One, the only ground asserted by Petitioner for relief, he contends that there was insufficient evidence supporting his conviction for corrupting another with drugs. The due process clause of the Fourteenth Amendment requires that a criminal conviction be based upon proof beyond a reasonable doubt as to every fact necessary to constitute the offense charged. *In re Winship*, 397 U.S. 358, 363-64, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). The standard for determining sufficiency of the evidence is "whether after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 317, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). In reaching its determination as to the sufficiency of the evidence, a court may not substitute its determination of guilt or innocence for that of the factfinder, nor may it weigh the credibility of witnesses. See *id*.; see also *Walker v. Engle*, 703 F.2d 959, 970 (6th Cir.1983).

To determine whether the state court unreasonably applied the sufficiency-of-the-evidence standard of *Jackson v. Virginia*, * * * "[f]irst, [the Court] must ask whether the evidence itself was sufficient to convict.... [and] [t]he inquiry ends if [the Court] determines that there was sufficient evidence." *Stewart v. Wolfenbarger*, 595 F.3d 647, 653 (6th Cir.2010) (citation omitted). Second, "[i]f [the Court] find[s] that the evidence is insufficient to convict, [the Court] must then apply AEDPA deference and ask whether the state court was 'objectively unreasonable' in concluding that

-12-

a rational trier of fact could find [petitioner] guilty beyond a reasonable doubt." *Id.* (citation omitted). The result of this double deference is that "habeas corpus relief is appropriate based on insufficient evidence only where we find, after viewing the evidence in the light most favorable to the prosecution, that no rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Parker v. Renico*, 506 F.3d 444, 448 (6th Cir.2007).  On habeas review, federal courts must assume that the jury "resolve[d] conflicts in the testimony," "weigh[ed] the evidence," and drew "reasonable inferences" therefrom. *Jackson*, supra, at 319.  A court should interfere with a jury verdict only to the extent necessary to guarantee the fundamental protections of due process of law.

The Fifth District provided the following analysis of Petitioner's insufficiency of the evidence claim, as it related to Count One:

> {¶ 16} In his First Assignment of Error, appellant argues his three-count conviction was not supported by sufficient evidence. We disagree.
>
> {¶ 17} In reviewing a claim of insufficient evidence, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus.
>
> Corrupting with Drugs Count
>
> {¶ 18} Appellant first challenges the sufficiency of the evidence pertaining to his conviction on one count of corrupting another with drugs under R.C. 2925.02(A)(4)(a). This statute states in pertinent part: "No person shall knowingly * * * [b]y any means, * * * [f]urnish or administer a controlled substance to a juvenile who is at least two years the offender's junior, when the offender knows the age of the juvenile or is reckless in that regard."
>
> {¶ 19} Appellant's challenge to the corrupting with drugs conviction is essentially two-fold.  First, he urges that there was no evidence that he knew the age of A.D. at the time of the drug transaction.  However, as the State responds in its brief, A.D., who had just turned 17 at the time of the trial, took the stand and was able to be observed by the jury. A.D.'s best friend, B.C., later testified that both girls knew appellant, and that he had asked them how old they were. See Tr. at 320.  Finally, we reiterate that the above statute includes a "reckless" standard regarding a defendant's knowledge of the age of the juvenile.
>
> {¶ 20} Appellant secondly asserts that the State is required to show that the substance furnished to the juvenile contains some detectable amount of the relevant controlled substance before a person can be convicted under the above statute.  In support, appellant cites *State v. Chandler* (2006), 109 Ohio St.3d 223, 846 N.E.2d 1234, 2006-Ohio-2285, wherein the Ohio Supreme Court held that a substance offered for sale must contain some detectable amount of the relevant controlled

>substance before a person can be sentenced as a major drug offender under R.C. 2925.03(C)(4)(g). *Id.* at syllabus. Our reading of *Chandler* indicates that the Court was concerned with drug offender sentencing, rather than reversing the underlying convictions for trafficking (which involved a substance that turned out to be baking soda). Indeed, the Court therein stated that a person can be convicted under Ohio law for offering to sell a controlled substance without actually transferring a controlled substance to the buyer. See *Chandler* at ¶ 9, citing *State v. Patterson* (1982), 69 Ohio St.2d 445, 432 N.E.2d 802. We thus find *Chandler* inapplicable in this case.
>
>{¶ 21} In the case *sub judice*, the State concedes that it presented no scientific evidence regarding the nature of the substance appellant provided to A.D. Nonetheless, A.D. testified at trial that appellant himself had identified the substance as heroin, which later caused her to get sick and pass out. Furthermore, when A.D.'s boyfriend, a heroin user, saw her after she woke up, he was angry at her for getting high.
>
>{¶ 22} Accordingly, viewing the evidence before us in a light most favorable to the prosecution, we hold reasonable triers of fact could have found, beyond a reasonable doubt, that appellant committed the crime of corrupting another with drugs.

*Wachtel,* supra.

Respondent contends that Petitioner procedurally defaulted the sole ground raised in his petition because he failed to present his constitutional claim to the Ohio Supreme Court. Respondent writes, "In his direct appeal to the Ohio Supreme Court, Wachtel did not present a constitutional argument. Instead, he made the instant argument on his direct appeal only to the Ohio Court of Appeals." ECF Dkt. #5 at 28.

A petitioner must fairly present to the state courts either the substance of or the substantial equivalent of the federal claim that he is presenting to a federal habeas court. A petitioner fairly presents a federal habeas claim to the state courts only if he "asserted both the factual and legal basis for his claim." *McMeans*, supra at 681; see also *Picard v. Connor*, 404 U.S. 270, 276, 277-78, 92 S.Ct. 509 (1971) (holding that petitioner's challenge to the legality of the indictment was neither the "substantial equivalent" of nor entailed the same "ultimate question for disposition" as his equal protection claim even though it relied upon the same factual basis, and, thus, that the state courts had no *sua sponte* duty to consider whether that factual basis resulted in a equal protection violation).

The exhaustion doctrine requires the petitioner to present "the same claim under the same theory" to the state courts before raising it on federal habeas review. *Pillette v. Foltz*, 824 F.2d 494, 497 (6th Cir.1987). As previously stated, in determining whether a petitioner "fairly presented" a

-14-

federal constitutional claim to the state courts, a court consider whether: (1) the petitioner phrased the federal claim in terms of the pertinent constitutional law or in terms sufficiently particular to allege a denial of the specific constitutional right in question; (2) the petitioner relied upon federal cases employing the constitutional analysis in question; (3) the petitioner relied upon state cases employing the federal constitutional analysis in question; or (4) the petitioner alleged "facts well within the mainstream of [the pertinent] constitutional law." *McMeans*, 228 F.3d at 681 (holding that "[g]eneral allegations of the denial of rights to a 'fair trial' and 'due process' do not 'fairly present' claims that specific constitutional rights were violated.")  On the other hand, a petitioner need not cite "book and verse on the federal constitution." *Picard,* 404 U.S. at 278, 92 S.Ct. 509 (quotation marks and citations omitted).

Here, Petitioner, in his first proposition of law in the memorandum in support of jurisdiction, relied exclusively upon Ohio case law interpreting Ohio statutes in order to articulate the issues to be raised before the Ohio Supreme Court.  Petitioner argued that the rationale underlying *Patterson*, supra, that is, that the language of R.C. 2925.03(A)(1), which prohibits trafficking in drugs, does not require knowledge of the nature of the substance to be an element of the offense, should be inapplicable to R.C. 2925.02.  Petitioner reasoned that "offering to sell" a controlled substance, in violation of R.C. 2925.03(A)(1), is categorically different than "furnishing" or "administering" a controlled substance, in violation of R.C. 2925.02.  Petitioner argued that the state must prove "that the substance was, in fact, a controlled substance to sustain a conviction under R.C. 2925.02." ECF Dkt. #5-11 at112.  Petitioner wrote, "The appellate court erroneously extended the holding in *Patterson* to a statute that it was not originally intended to address, whereby violating appellant's right to due process." *Id.*  In his second proposition of law, Petitioner argued that the state failed to lay a proper foundation with respect to the lay testimony relied upon to establish the identity of the controlled substance at trial in contravention of *State v. McKee*, 91 Ohio St.3d 292, 744 N.E.2d 737 (2001).  Petitioner cited no federal case law, nor did he allege even in passing a constitutional violation in his second proposition of law.

It is well-established a claim predicated upon insufficient evidence states a claim for relief under the Fourteenth Amendment for the denial of due process.  *Jackson*, supra.  However,

-15-

Respondent correctly argues that Petitioner did not assert his propositions of law before the Ohio Supreme Court in terms of the United States Constitution or cite the Fourteenth Amendment. Petitioner's first proposition of law raised before the Ohio Supreme Court mentioned due process only once, and was, for the most part, predicated purely upon the interpretation of Ohio statutes. Likewise, in his second proposition of law, Petitioner challenged the application of Ohio case law through his assertion that a proper foundation had not been laid for the admission of lay testimony regarding the substance given to A.D. As a consequence, Petitioner did not assert both the same legal and factual basis for his claims before the Fifth District Court of Appeals and the Ohio Supreme Court, see *McMeans, supra,* and, he provides no cause to excuse his failure to raise his constitutional claims to the Ohio Supreme Court. If a petitioner fails to show cause for his procedural default, the reviewing court need not address the issue of prejudice. See *Smith v. Murray*, 477 U.S. 527, 106 S.Ct. 2661, 91 L.Ed.2d 434 (1986). Therefore, the undersigned recommends that Petitioner has procedurally defaulted his sufficiency of the evidence claim.

However, even if the Court concludes that Petitioner fairly presented his sufficiency of the evidence claim to the Ohio Supreme Court, the claim should fail. Petitioner argues that the state must prove that the substance provided to A.D. was a controlled substance in order to sustain a conviction under R.C. 2925.02. In a habeas case, a federal court is obligated to "accept a state court's interpretation of the state's statutes and rules of practice." *Hutchinson*, supra; see also *Derungs v. Wal-Mart Stores, Inc.*, 374 F.3d 428, 433 (6th Cir.2004) ("If the state supreme court has spoken on the issue, its decision should be followed: if, however, the only precedent is from the state's intermediate appellate court's, the intermediate court's decision should be followed absent a strong showing that the state supreme court would act in a different manner.") Petitioner further contends that the lay testimony provided to establish that the substance he gave to A.D. was a controlled substance lacked a proper foundation. However, this argument challenges the application of state law, which is not subject to habeas corpus review. See *Estelle v. McGuire*, 502 U.S. 62, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991).

The only issue before this Court is whether the evidence offered at trial was sufficient to sustain Petitioner's conviction for corrupting another with drugs. As the Fifth District correctly

-16-

observed, A.D. testified that Petitioner told her that the substance that he offered her was heroin, she became ill after ingesting the substance, and her boyfriend, a frequent heroin user, was angry with her for taking drugs.

A.D. provided the following testimony at trial. She and her boyfriend were guests at Petitioner's house on July 11, 2008. ECF Dkt. #5-17 at 433. A.D., Petitioner, A.D.'s boyfriend, a third man, and another girl were seated on the couch, but the men and the other girl kept going in and out of the bedroom. *Id.* at 434. At some point, the other girl left the house. *Id.* at 435. Petitioner and A.D.'s boyfriend then went into the bedroom for ten to fifteen minutes, and when they returned, her boyfriend was "really, really messed up." *Id.* at 435-436. A.D. testified that her boyfriend's eyes were barely open and he could barely talk, and he was hostile. *Id.* at 436. Approximately fifteen minutes later, A.D.'s boyfriend passed out on the couch. *Id.*

Approximately a half hour to an hour later, Petitioner invited A.D. into the bedroom, asked her for money, and "asked [her] if she wanted heroin." *Id.* at 437. Petitioner laid out two lines of "a whitish, yellowish powder" and gave A.D. a rolled-up dollar bill. *Id.* at 437-438. A.D. testified that she did one line and then returned to the living room, where she became physically ill, ultimately vomiting repeatedly into a bucket, and then passing out. *Id.* at 437-438. When A.D.'s boyfriend regained consciousness, he was angry that A.D. "was messed up." *Id.* at 439.

Contrary to Petitioner's assertions, the foregoing uncontroverted evidence is sufficient to sustain a conviction pursuant to R.C. 2925.02. See *State v. Jones* (May 2, 1995), 10th Dist. No. 94AP08-1209, 1995 WL 258968 (noting that "the primary thrust of R.C. 2925.02 is avoiding corruption and involvement of juveniles in the drug trade" and concluding that the actual nature of the substances involved cannot exonerate the offender); see also *State v. Kovach* (March 15, 2000), 9th Dist. No. 99CA007282, 2000 WL 277917 (plain language of R.C. 2925.02(A)(4)(a) attaches the culpable mental state to the act of furnishing, but does not separately require that the offender know the actual identification of the substance). Accordingly, Ground One, the only ground asserted by Petitioner for relief, should be dismissed.

### **VII.    CONCLUSION AND RECOMMENDATION**

For the foregoing reasons, the undersigned RECOMMENDS that the Court DISMISS the instant petition in its entirety with prejudice.


DATE: May 8, 2012

                                          */s/George J. Limbert*
                                          GEORGE J. LIMBERT
                                          UNITED STATES MAGISTRATE JUDGE


ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of service of this notice. Fed. R. Civ. P. 72; L.R. 72.3. Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. L.R. 72.3(b).